SPRING (TRIPP v.).　See Case No. 14,180.

---

## Case No. 13,262.

### The SPRINGBOK.

[Blatchf. Pr. Cas. 349.][1]

District Court, S. D. New York.　Me＿, 1862.

PRIZE — PRACTICE — ORDER TO EXAMINE CARGO — DELAY — SHIP'S PAPERS — BELLIGERENT RIGHT OF SEARCH.

1. An order was made by the court in this case that the marshal open the packages of cargo found on board of this vessel, covered by two of the bills of lading found on board, and take an inventory of their contents, their contents not being specified in any papers found on the vessel.

2. A claimant in a prize suit can, under the rules of the court, cause the suit to be disposed of, if the libellants are guilty of any wrongful delay in its prosecution.

3. The right of a belligerent to visit and search a neutral vessel in time of war implies a power in the prize court of the belligerent to which a captured neutral vessel is sent for adjudication, to order, under reasonable precautions and forbearance, an examination of the cargo sufficient to ascertain its character, and then to employ evidence, so acquired, as further proof to establish the culpability of the voyage.

[Cited in The Peterhoff, Case No. 11,024.]

4. The belligerent right of search may be made efficient by an examination of the lading, as well as the papers of a vessel.

In admiralty.

---

BETTS, District Judge. A succession of motions and counter motions have been made by the respective parties to this suit, antagonistic to each other, and collateral to the main merits in issue on the pleadings, in some instances seeking to enforce the proceedings before the court with greater speed, and in others to obtain delay in the final hearing of the cause. Those subsidiary proceedings have resulted in placing the case before the court in this posture: (1) The libellants urge a postponement of the trial of the cause now standing upon the trial docket, on cross notices by the libellants and the claimants, until Mr. Upton, one of the counsel for the libellants, shall be relieved from detention as a witness, upon subpœna, before the solicitor of the treasury, on a public investigation now on foot before that officer, and be enabled to attend the trial of this suit, and, furthermore, until such search and examination of the cargo seized on board of the bark, as may be ordered on the motion therefor pending before the court, shall be fully made. (2) The claimants demand that the libellants proceed peremptorily to the trial of the cause, or that the same be dismissed from the docket.

In point of form it is not earnestly contended by the claimants that a reasonable and legal excuse is not supplied for delaying the hearing of the cause because of the detention of Mr. Upton from the sitting of this court, under a subpœna exacting his attendance before another tribunal, nor that such detention has been unreasonable in duration thus far; and it is, accordingly, considered that no laches are imputable to the libellants for that cause, and that they are entitled to a further continuance of the case until otherwise ordered by the court. But the claimants strenuously oppose the delay of the cause to enable the libellants to search and inspect the contents of the packages containing the cargo seized: first, because the law of nations denies to the captors the right to break the bulk of the cargo, or to use the contents of the lading as evidence, in the first instance, to establish the illegality of the voyage on which the vessel was arrested. This position is not maintained to that extent by all of the counsel for the claimants, but they concur in insisting and protesting that an order cannot now be made by the court, allowing the bulk of the cargo to be broken, by reason of the gross delay of the libellants in making application to the court for such authorization, and also because of the loose and inadequate frame of the papers upon which such application is now founded. The application by the libellants to have the cargo inspected does not, as it seems to be understood by the counsel for the claimants, embrace the whole lading of the vessel, but is limited to the packages mentioned in two bills of lading only (Nos. 3 and 4), because no invoices or bills of particulars among the ship's papers designate the contents of those packages. Nor does this motion pray for any stay in the regular course of the cause. If there had been any delinquency in the prosecution of the suit by the libellants, the claimant had a ready and adequate relief provided in the standing rules of the court, whereby they could, by their own affirmative action, have displaced the suit from the record, and compelled a restoration of vessel and cargo. Prize Rule, No. 23; Admiralty Rule (Supreme Court), No. 39; Admiralty Rule (District Court), No. 123. And they were under no compulsion to await the tardiness of the libellants, if any wrongful delays were practiced against them.

The general principle upon which a motion to the court to order a prize cargo opened, when under seizure, and charged with being composed of articles contraband of war, is grounded and sustained, was recognized during the present term in the case of The Peterhoff [Case No. 11,024]. The counsel for the claimants in that case protested against the rightfulness of the seizure of the vessel and cargo, and the regularity of a resort to the lading of the vessel for proof in preparatorio, but did not directly controvert the doctrine that the right of a belligerent to visit and search a neutral vessel in the time of war implies a power in the prize court of the belligerent, to which the neutral vessel is sent for adjudication, to order, under reasonable precautions and forbearance, an examination of the cargo, sufficient to ascertain its character, and then to employ evidence so acquired, in the way of further proof, to establish the culpability of the voyage. It is believed that the general principle is irrefragable, and equivalent to an axiom in the law of nations. Grave questions may, doubtless, present themselves as to the methods or processes by which the rule is to be administered; but errors or excesses of that character do not abrogate its validity, and generally only afford opportunity to the courts to repress an improper resistance in the wrong, or to redress it with adequate penalties or indemnification, when committed. The present motion does not present the occasion for discussing the general subject touching the import and extent of the right of visitation and search in the sense in which it is applicable to this class of cases. As a governing dogma of national right and law, it may fairly be understood to look to practical and useful results, and not to mean that a neutral vessel can be laden with contraband of war, and attempt to convey it ad libitum on the ocean, without being liable to account for navigating with such a cargo in the vicinity or direction of enemy ports, or ports convenient to the use of the enemy, unless, before she is seized, evidence aliunde as regards her equipment and lading be discovered, proving that her voyage was intended for the benefit of the enemy. A complete cover to the most injurious

frauds might thus be secured, if the offending vessel was adroit enough to carry no paper or person capable of supplying evidence of the culpability of her enterprise. The law authorizing a visitation and search is ample enough in its provisions, and is believed to be sufficiently distinct and efficient in its intent and policy, to enable prize courts proceeding under it to render its action a wholesome and conservative agency in preserving and promoting the common interests and purposes of the family of nations by whom it has been adopted. Its fundamental and controlling doctrines are laid down, with singular precision and unanimity, in the text writings and judicial adjudications of the principal jurists of Europe and America, that it will be sufficient for the purpose of the present inquiry to advert to some of those authorities, eminently reliable for their weight and general influence. Naturally, the first object of the visitation and search of a neutral vessel by a belligerent cruiser is to examine the ship's documents and papers, and to ascertain her nationality, her port of departure, her destination, her lading, and the evidence of its character and ownership, so far as those particulars are determined by the papers on board. The next step is, if circumstances of a suspicious bearing are discovered, indicating her employment to be in violation of good faith and honest neutrality, to seize the vessel and cargo and submit them to adjudication before a prize court of the belligerent power which makes the arrest. This right is conceded and exercised by all maritime nations, in time of war, in respect to the transportation by sea of contraband of war. Sufficient evidence of the generality and extent of this power is found strongly stated in the standard and most familiar authorities, domestic and foreign. 3 Phillim. Int. Law, pt. 10, c. 3, § 325; 1 Kent, Comm. 154; Wheat. Int. Law, pt. 2, § 15; The Maria, 1 C. Rob. Adm. 340; The Anna Maria, 2 Wheat. [15 U. S.] 332; U. S. v. La Juene Eugenie [Case No. 15,551]; Wheat. Capt. 94, art. 19; Halleck, Int. Law, c. 25. It will also be found that the right of search may be made effective by an examination of the lading as well as the papers of the vessel, restrained always within the limits of a fair and reasonable reserve. The Maria, 1 C. Rob. Adm. 340; The Anna Maria, 2 Wheat. [15 U. S.] 332.

I am of opinion that the libellants are entitled to an order of the court allowing them to have, under the superintendence of proper officers of the court, a view of the lading of the vessel, limited to the aforesaid packages contained in the bills of lading Nos. 3 and 4. It is therefore ordered that the marshal cause the packages found in the bills of lading Nos. 3 and 4, laden on board of the said

vessel, and in his possession under her arrest, to be opened at a convenient time and place, in presence of the counsel for the respective parties and of the marshal, and that an inventory of the contents thereof be made in the presence of said parties, and that a report thereon be forthwith made by the marshal to the court, to abide the further order of the court in the cause.

[Subsequently the vessel and cargo in this case were both condemned. Cases Nos. 13,263 and 13,264. Upon appeal to the supreme court the decree against the vessel was reversed. 5 Wall. (72 U. S.) 1.]